FILED

APR 28 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Summons issued

BY FAX



1  Kent A. Gardiner *(pro hac vice)*
   Kathryn D. Kirmayer *(pro hac vice)*
2  Jerome A. Murphy *(pro hac vice)*
   CROWELL & MORING LLP
3  1001 Pennsylvania Avenue, N.W.
   Washington, D.C. 20004
4  Telephone: 202-624-2500
   Facsimile: 202-628-5116
5  E-mail: kgardiner@crowell.com
            kkirmayer@crowell.com
6           jmurphy@crowell.com

7  Daniel A. Sasse (CA Bar No. 236234)
   Christine E. Cwiertny (CA Bar No. 222098)
8  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
9  Irvine, California 92614
   Telephone: 949-263-8400
10 Facsimile: 949-263-8414
   E-mail: dsasse@crowell.com
11          ccwiertny@crowell.com

12 Counsel for Plaintiff Unisys Corporation

13            UNITED STATES DISTRICT COURT

14    NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

15 UNISYS CORPORATION, a Delaware          Case No.
   corporation,
16                                          **COMPLAINT FOR DAMAGES AND**
                        Plaintiff,          **INJUNCTIVE RELIEF**
17
         v.                                 **(1)    VIOLATION OF THE**
18                                          **SHERMAN ACT PURSUANT TO**
   HYNIX SEMICONDUCTOR, INC. a Korean       **15 U.S.C. § 1**
19 corporation, HYNIX SEMICONDUCTOR
   AMERICA INC., a California corporation,  **(2)    VIOLATION OF**
20 MOSEL VITELIC INC., a Taiwanese          **CALIFORNIA'S CARTWRIGHT**
   corporation, MOSEL VITELIC               **ACT PURSUANT TO §§ 16700**
21 CORPORATION, a California corporation,   **ET SEQ. OF CAL. BUS. & PROF.**
   NANYA TECHNOLOGY CORPORATION,            **CODE**
22 a Taiwanese corporation, NANYA
   TECHNOLOGY CORPORATION, USA, a           **(3)    VIOLATION OF**
23 California corporation, WINBOND          **CALIFORNIA'S UNFAIR**
   ELECTRONICS CORPORATION, a               **COMPETITION ACT PURSUANT**
24 Taiwanese corporation, WINBOND           **TO §§ 17200 ET SEQ. OF CAL. BUS.**
   ELECTRONICS CORPORATION                  **& PROF. CODE**
25 AMERICA, a Delaware corporation,
   MITSUBISHI ELECTRIC CORPORATION,         **DEMAND FOR JURY TRIAL**
26 a Japanese corporation, MITSUBISHI
   ELECTRIC AND ELECTRONICS USA,
27 INC., a Delaware corporation, MITSUBISHI
   ELECTRIC EUROPE B.V., a Netherlands
28 corporation, INFINEON TECHNOLOGIES
   AG, a German corporation, INFINEON
   TECHNOLOGIES NORTH AMERICA

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

**COMPLAINT OF UNISYS CORPORATION**

CORPORATION, a Delaware corporation,
and DOE DEFENDANTS 1 through 5,

                    Defendants.

1

2

3

4          Plaintiff Unisys Corporation, for its complaint against defendants Hynix

5   Semiconductor, Inc., Hynix Semiconductor America Inc., Mosel Vitelic Inc., Mosel

6   Vitelic Corporation, Nanya Technology Corporation, Nanya Technology Corporation

7   (USA), Winbond Electronics Corporation, Winbond Electronics Corporation America,

8   Mitsubishi Electric Corporation, Mitsubishi Electric and Electronics USA, Inc.,

9   Mitsubishi Electric Europe B.V., Infineon Technologies AG, Infineon Technologies

10  North America Corporation, and Doe Defendants 1 through 5, alleges as follows:

11  **A.    Nature of Action**

12         1.     Plaintiff Unisys Corporation ("Unisys" or "Plaintiff") brings this action to

13  recover damages it has incurred as a result of long-standing collusion by suppliers of

14  dynamic random access memory ("DRAM") computer chips. As described in more

15  detail below, in June 2002 the United States Department of Justice announced that it had

16  uncovered a long-standing conspiracy among the world's DRAM suppliers. During the

17  conspiracy, DRAM suppliers conspired to control production capacity, raise prices or

18  slow their decline, allocate customers, and otherwise unlawfully overcharge their DRAM

19  customers. During that same period of time, Plaintiff purchased many millions of dollars

20  of DRAM chips from the conspirators.

21         2.     As a result of the Department of Justice's investigation, five of the world's

22  largest suppliers of DRAM chips have now admitted their involvement in the conspiracy:

23  defendants Hynix Semiconductor, Inc. and Infineon Technologies AG and

24  co-conspirators Micron Technology, Inc., Samsung Electronics Co., Ltd., and Elpida

25  Memory, Inc. Micron Technology, Inc. obtained amnesty from criminal prosecution by

26  being the first to admit its participation in the illegal cartel; Infineon Technologies AG,

27  Hynix Semiconductor, Inc., Samsung Electronics Co., Ltd., and Elpida Memory, Inc.

28  have agreed to enter guilty pleas and pay fines based on their involvement in the illegal

1   activities. Furthermore, senior officials of Micron Technology, Inc., Hynix

2   Semiconductor, Inc., Samsung Electronics Co., Ltd., and Infineon Technologies AG

3   have pleaded guilty to colluding with their competitors to fix and raise DRAM prices.

4   The Department of Justice investigation is continuing, and additional guilty pleas from

5   other conspirators are expected.

6        3.    Plaintiff seeks treble damages and injunctive relief to remedy injuries it

7   sustained as a result of the defendants' illegal activities.

8   **B.   Jurisdiction and Venue**

9        4.    Plaintiff brings this action pursuant to Sections 4, 12, and 16 of the Clayton

10  Act (15 U.S.C. § § 15, 22, and 26) (2000 suppl. 2) for treble damages and injunctive

11  relief, as well as reasonable attorneys' fees and costs, with respect to the injuries they

12  sustained arising from violations by the defendants of Section 1 of the Sherman Act, 15

13  U.S.C. § 1 (2000 suppl. 2).

14       5.    Plaintiff also brings this action pursuant to Section 16750(a) of the

15  California Business and Professions Code, for injunctive relief and treble damages that it

16  sustained due to violations by the defendants and their co-conspirators of Section 16700

17  *et seq.* of the California Business and Professions Code (the "Cartwright Act").

18  Plaintiff's claims also are brought pursuant to Sections 17203 and 17204 of the California

19  Business and Professions Code, to obtain restitution from and an injunction against the

20  Defendants due to their violations of Section 17200 *et seq.* of the California Business and

21  Professions Code (the "Unfair Competition Act").

22       6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1331

23  and 1337(a). This Court has supplemental jurisdiction over Plaintiff's state law claims

24  pursuant to 28 U.S.C. § 1367(a).

25       7.    This Court has jurisdiction over this action pursuant to the Foreign Trade

26  Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that Plaintiff's injuries

27  were proximately caused by increased prices for DRAM in the United States.

28       8.    Venue is proper in this judicial district pursuant to 15 U.S.C. § § 15

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

8

1  and 22, and 28 U.S.C. 1391(b), (c), and (d), in that at least one of the defendants resides

2  in this judicial district or is licensed to do business or is doing business in this judicial

3  district. Venue as to each defendant also is proper in this judicial district pursuant to the

4  provisions of Sections 16750(a) and 17203 of the Business and Professions Code. The

5  unlawful conduct undertaken pursuant to the combination and conspiracy alleged herein

6  had and has a direct effect on business within the State of California, and the trade and

7  commerce described below is carried on to a significant degree within the State of

8  California.

9        9.      This Court has *in personam* jurisdiction over each of the defendants

10  because, *inter alia*, each defendant (a) transacted business throughout the United States

11  including this district; (b) manufactured, sold, shipped, and delivered substantial

12  quantities of DRAM throughout the United States including this district; (c) had

13  substantial contacts with the United States; and (d) was engaged in an illegal scheme and

14  price-fixing conspiracy that was directed at and had the intended effect of causing injury

15  to persons and entities residing in, located in, or doing business throughout the United

16  States.

17  **C.    Intradistrict Assignment**

18        10.     Because a large number of the defendants maintain their principal places of

19  business within Santa Clara County, and a substantial part of the events which give rise to

20  Unisys's claim occurred there, this action arises in Santa Clara County for the purposes

21  of Civil L.R. 3-2(c), and should be assigned to the San Jose Division.

22  **D.    Parties**

23        11.     Unisys is a Delaware corporation with its principal place of business in

24  Blue Bell, Pennsylvania. Unisys is a worldwide technology services and solutions

25  company, with expertise in consulting, systems integration, outsourcing, infrastructure,

26  and server technology aimed at achieving secure business operations for its clients. In

27  2005, Unisys had revenues of over $5.5 million. During the relevant timeframe, Unisys

28  was a direct purchaser of DRAM from some of the defendants. As a direct purchaser,

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   Unisys negotiated with defendants the price of DRAM. Unisys purchased memory

2   modules primarily comprised of DRAM. Defendants' price-fixing was the proximate

3   cause of artificially-elevated prices actually paid by Unisys for DRAM delivered both

4   throughout the United States and the world. To the extent Unisys was an indirect

5   purchaser of DRAM, the price of that DRAM was artificially inflated, causing Unisys to

6   pay a higher price.

7        12.    Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains its

8   head offices at SAN 136-1, Ami-Ri, Bubal-eub, Ichon-si, Kyongki-do, Korea. During the

9   time covered in this complaint, Hynix Semiconductor, Inc., a manufacturer of DRAM,

10  sold and distributed DRAM throughout the world, including the United States.

11       13.    Defendant Hynix Semiconductor America Inc. is a California corporation

12  located at 3101 North First Street, San Jose, California 95134. Hynix Semiconductor

13  America Inc., on information and belief, is a wholly-owned and controlled subsidiary of

14  defendant Hynix Semiconductor, Inc. (collectively referred to as "Hynix"). During the

15  time period covered in this complaint, Hynix Semiconductor America Inc. sold and

16  distributed DRAM throughout the United States.

17       14.    Defendant Mosel Vitelic Inc. is a Taiwanese corporation which maintains

18  its headquarters at No. 19 Li-Hsin Road, Science Based Industrial Park, Hsinchu,

19  Taiwan, R.O.C. During the time period covered in this complaint, Mosel Vitelic Inc., a

20  manufacturer of DRAM, sold and distributed DRAM throughout the world, including the

21  United States.

22       15.    Defendant Mosel Vitelic Corporation is a California corporation located at

23  3910 North First Street, San Jose, California 95314. Mosel Vitelic Corporation, on

24  information and belief, is a wholly-owned and controlled subsidiary of defendant Mosel

25  Vitelic Inc. (collectively referred to as "Mosel Vitelic"). During the time period covered

26  in this complaint, Mosel Vitelic Corp. sold and distributed DRAM throughout the United

27  States.

28       16.    Defendant Nanya Technology Corporation is a Taiwanese corporation

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

5

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  which maintains its headquarters at HWA YA Technology Park, 669 Fu Hsing 3rd Rd.

2  Keuishan, Taoyuan, Taiwan, R.O.C. During the time period covered in this complaint,

3  Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM

4  throughout the world, including the United States.

5       17.    Defendant Nanya Technology Corporation, USA, a California corporation,

6  is located at 675 E. Brokaw Road, San Jose, California 95112. On information and

7  belief, Nanya Technology Corporation USA is a wholly-owned and controlled subsidiary

8  of defendant Nanya Technology Corporation (collectively referred to as "Nanya"). In

9  addition to its main U.S. office in San Jose, Nanya Technology Corporation operates

10  sales and technical support offices in San Jose, California; Raleigh, North Carolina; and

11  Austin, Texas, and operates a memory design center in Houston, Texas. During the time

12  period covered in this complaint, Nanya Technology Corporation USA sold and

13  distributed DRAM throughout the United States.

14       18.    Defendant Winbond Electronics Corporation is headquartered at No. 4,

15  Creation Road 3 and No. 9, Li-Shin Road, Science-Based Industrial Park, Hsinchu,

16  Taiwan, R.O.C. During the time period covered in this complaint, Winbond Electronics

17  Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

18  world, including the United States.

19       19.    Defendant Winbond Electronics Corporation America, a Delaware

20  corporation, is located at 2727 North First Street, San Jose, California 95134 and is a

21  wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as

22  "Winbond"). During the time period covered in this complaint, Winbond Electronics

23  Corporation America sold and distributed DRAM throughout the United States.

24       20.    Defendant Mitsubishi Electric Corporation, a Japanese corporation, is

25  headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310,

26  Japan. During the time period covered in this complaint, Mitsubishi Electric

27  Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

28  world, including the United States.

COMPLAINT OF UNISYS CORPORATION

1  21.   Defendant Mitsubishi Electric and Electronics USA, Inc., a Delaware

2  corporation, is headquartered at 5665 Plaza Drive, Cypress, CA 90630-0003 and is a

3  wholly-owned subsidiary of Mitsubishi Electric Corporation. During the time period

4  covered in this complaint, Mitsubishi Electric and Electronics USA, Inc. sold and

5  distributed DRAM throughout the United States.

6  22.   Defendant Mitsubishi Electric Europe B.V., a Netherlands corporation and

7  a wholly-owned subsidiary of Mitsubishi Electric Corporation (collectively, with

8  Mitsubishi Electric and Electronics USA, Inc., referred to as "Mitsubishi"), is

9  headquartered at The Atrium, Uxbridge One, 1 Harefield Road, Uxbridge, Middlesex,

10  UB8 1PH, England, with its United Kingdom branch at Travellers Lane, Hatfield,

11  Hertfordshire, AL 10 8XB. During the time period covered in this complaint, Mitsubishi

12  Electric Europe B.V. sold and distributed DRAM throughout the United States and the

13  European Union.

14  23.   Defendant Infineon Technologies AG, a German corporation, has its

15  principal place of business at Saint Martin St. 53, Munich, 81669, Germany. During the

16  time period covered in this complaint, Infineon Technologies AG, a manufacturer of

17  DRAM, sold and distributed DRAM throughout the world, including the United States.

18  24.   Defendant Infineon Technologies North America Corporation, a Delaware

19  corporation and a wholly-owned subsidiary of Infineon Technologies AG (collectively,

20  "Infineon"), has its principal place of business at 1730 North First Street, San Jose,

21  California 95112. During the time period covered in this complaint, Infineon

22  Technologies North America Corporation sold and distributed DRAM throughout the

23  United States.

24  25.   Doe Defendants 1 through 5 are persons whose identities are as yet

25  unknown to Plaintiff and who have participated in the violations of the federal and state

26  antitrust laws for which Plaintiff seeks relief, and have performed acts and made

27  statements in furtherance thereof.

28  26.   Various individuals, partnerships, corporations, and associations other than

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

7

1   the Defendants named in this Complaint (the "Co-conspirators")(and jointly with the

2   named defendants, "Defendants") have participated in the violations of the federal and

3   state antitrust laws for which Plaintiff seeks relief, and have performed acts and made

4   statements in furtherance thereof.

5       27.     Whenever in this Complaint reference is made to any act, deed, or

6   transaction of any corporation, the allegation means that the corporation engaged in the

7   act, deed, or transaction by or through its officers, directors, agents, employees, or

8   representatives while they were actively engaged in the management, direction, control,

9   or transaction of the corporation's business or affairs.

10  **E.    Trade and Commerce**

11      28.     During the relevant period, Defendants sold and shipped substantial

12  quantities of DRAM in a continuous and uninterrupted flow of interstate and international

13  commerce to customers located in states other than the states in which Defendants are

14  located.

15      29.     The business activities of Defendants that are the subject of this Complaint

16  were within the flow of, and substantially affected, interstate trade and commerce.

17      30.     During the relevant period, Defendants made most of the DRAM sales in

18  the global market.

19  **F.    Statement of Facts**

20      31.     Defendants manufacture, sell, and distribute memory chips throughout the

21  world, including the United States.  Memory chips store data in a wide variety of

22  computing and electronic devices.  Memory chips are used in the manufacture of, and are

23  critical to the functioning of, such devices as personal computers, workstations, servers,

24  printers, fax machines, digital cameras and video recorders, video game equipment,

25  personal digital assistants, and cellular and wireless telephones.

26      32.     DRAM is the dominant, most common form of memory chip.  "Random

27  Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed

28  directly from any part of the memory, rather than having to proceed sequentially from

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   some starting place. DRAM is called "dynamic" because it must have its storage cells

2   refreshed or given a new electronic charge every few milliseconds.

3        33.   A DRAM chip is a large-scale integrated circuit with simple structures, and

4   is fairly easy to manufacture. Accordingly, DRAM is a commodity, with each of

5   Defendants' products being freely interchangeable with the products of another company.

6        34.   DRAM is sold in individual chips, or in modules with several chips

7   attached to each module.

8        35.   DRAM sales exceed $20 billion a year. The world's top four makers of

9   DRAM, all of whom are Defendants herein, control roughly 70% of the market; the top

10   six manufacturers control 96% of the market.

11        36.   The DRAM industry enjoyed an extended period of prosperity in the mid-

12   1990s as the PC computer industry boomed. During this time, DRAM manufacturers

13   could not meet the demand for their products. Revenues from DRAM sales nearly tripled

14   between 1993 and 1995. DRAM manufacturers responded by building substantial new

15   chip-making capacity. Factories for the manufacture of DRAM chips are referred to as

16   fabrication plants, or "fabs."

17        37.   In 1996, this new capacity, coupled with demand decline, led to pressure on

18   Defendants to cut their prices. Defendants responded by illegally conspiring to limit

19   capacity and artificially fix and raise prices.

20        38.   Specifically, in December 1996, DRAM manufacturers attended a

21   SyncLink Consortium. SyncLink was a DRAM industry organization whose members

22   consisted of DRAM suppliers. During this December 1996 meeting, DRAM suppliers

23   resolved to establish unified strategies to address market concerns. Although the

24   organization initially appears to have been created to address technology concerns, the

25   industry reorganized the consortium in January 1999, causing the new president of the

26   organization to acknowledge publicly that the focus of the group would be to "co-

27   ordinate instead of develop new technology."

28        39.   Executives from DRAM suppliers met again in Japan in January 1997.

9

COMPLAINT OF UNISYS CORPORATION

1    During this meeting the participants agreed that they would need to continue

2    communicating with each other. The participants also agreed to use an e-mail

3    distribution software program then known as a reflector e-mail, which permitted industry

4    executives to exchange information via e-mail quickly and confidentially.

5         40.    Shortly after this meeting, in February 1997, DRAM suppliers curtailed

6    production at their DRAM manufacturing facilities, as part of a collusive effort to

7    maintain and raise prices.

8         41.    This coordinated drop in production had an immediate, but temporary,

9    effect on prices, which rose during the second quarter of 1997. Prices then began to fall

10   again in the second half of 1997.

11        42.    As DRAM prices continued to fall into early 1998, DRAM manufacturers

12   held at least two meetings to discuss the problem in April and June. The second meeting,

13   held on June 25, was called an "Executive Summit" and was attended by industry

14   executives. One of the topics at the Summit was how to "Manage Price Competition,

15   Profitability." Upon information and belief, during these meetings, and in

16   communications before and after these meetings, Defendants discussed supply and

17   pricing issues, and agreed that they would limit their capacity to artificially decrease the

18   supply of, and increase, maintain, or control the price of, DRAM chips.

19        43.    Between June and September of 1998 every major DRAM manufacturer

20   announced that it was curtailing or shutting down DRAM production facilities because of

21   a lack of demand for the product. Defendant Hynix's corporate predecessor, Hyundai,[1]

22   and Co-conspirator Samsung Electronics Co., Ltd. each shut down their facilities for

23   approximately one to two weeks in the summer of 1998. Other suppliers communicated

24   their intentions to slash production.

25

26

27   [1]    The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics.
     In April 2001 Hyundai renamed this subsidiary Hynix Semiconductor. In August 2001
28   Hyundai spun off the company.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

44.   This coordinated withdrawal of production capacity had an immediate

effect on prices, which began to rise in June 1998, and increased steadily throughout the

rest of the year.

45.   In August 1998, an e-mail circulated among DRAM suppliers, which

warned that during the ramp-up in production of a new DRAM standard being

implemented by Rambus, DRAM vendors "will need a constant flow of information to

help make wise decisions and to walk the fine line between a pleasant shortage and a

disastrous over-supply." A Hyundai executive noted that a shortage would please

DRAM manufacturers because "prices go up."

46.   A former Samsung employee, Devin Cole, has admitted that before he left

Co-conspirator Samsung in July 1998, he spoke with competitors regarding price issues.

Cole informed federal authorities that these conversations led to agreements on a "range

pact" that included "the ranges of prices, where each competitor felt that others would

price in the range, and whether each competitor would move prices 'a little' or 'a lot'."

Upon information and belief, this evidence is corroborated by Cole's own notes and other

documents.

47.   DRAM prices continued to climb steadily in 1999. During this time,

Defendants continued their illegal communications with each other about prices, market

share, and supply. In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi,

the vice president of marketing for Hyundai and head of the DRAM industry group

SLDRAM Inc. (the successor organization to SyncLink). The e-mail states that "[w]ith

Samsung building significant amounts of product, we need to work with them to limit the

supply in the market, otherwise we both will be competing for market share which will

result in an oversupply. We have to meet with Samsung and discuss our and their

production plan, TAM analysis and targeted market share." In response, another

Hyundai employee stated that he had "a connection in samsung" [sic] and offered to set

up a meeting.

48.   A short time later, co-conspirator Samsung and Hyundai both began raising

crowell moring
3 Park Plaza, 20th Floor
Irvine, LA 92614-8505
949 263-8400

11

1   prices at an accelerated rate. Indeed, in September 1999, industry sources noted that

2   South Korea's DRAM suppliers -- Samsung and Hyundai -- were raising prices in one-to-

3   two week intervals.

4        49.    Despite their unlawful and secret cooperation to reduce DRAM production

5   and increase price, Defendants publicly misrepresented that DRAM prices escalated due

6   to increased demand resulting from strong sales of low-priced PCs incorporating large

7   quantities of DRAM. In a September 13, 1999, Electronic News article, Avo Kanadjian,

8   vice president of marketing of Co-conspirator Samsung Semiconductor, Inc. said:

9   "Because we see the value PC and free PCs entering the market at extraordinary

10  numbers, DRAM oversupply has silently gone into a shortage." Chee-Wai Ho, director

11  of product marketing for memory products at Infineon Technologies AG, agreed.

12       50.    Because of Defendants' collusive activities, DRAM prices remained

13  artificially inflated from the middle of 1998 through the fall of 2000.

14       51.    In August 2000 prices began to drop once again. By mid-2001, every

15  major DRAM manufacturer was reporting losses. Their stock prices fell. Once again the

16  Defendants responded by conspiring with each other to control production and raise

17  prices. Their collusive activities included, but were not limited to, the following:

18       •   In July 2001, Hynix Semiconductor, Inc. announced plans to cut

19           production to boost prices: A spokeswoman for Hynix stated: "We

20           understand other companies are also considering cuts."

21       •   In August 2001, a Mosel-Vitelic executive admitted that Taiwan DRAM

22           manufacturers had discussed curtailing production in an effort to raise

23           prices.

24       •   Also in August, Thomas Chang at Mosel Vitelic acknowledged talking

25           to other Taiwanese DRAM manufacturers about reducing supply. "Our

26           preliminary agreement is to trim some production starting September."

27       •   In November, Micron Technology, Inc. manager Kathy Radford

28           acknowledged efforts of Infineon and Samsung to raise prices of

COMPLAINT OF UNISYS CORPORATION

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   DRAM, and stated that Micron intended to raise prices for all of its

2   OEM customers: "The consensus from all suppliers is that if Micron

3   makes the move, all of them will do the same and make it stick."

4   • Alfred Censullo, a former Micron Technology, Inc. sales manager, also

5   confirmed that Micron spoke with competitors about pricing. Censullo

6   pleaded guilty in January 2004 to federal charges of obstruction of

7   justice, for altering and withholding documents responsive to a grand

8   jury subpoena issued to Micron. At his sentencing hearing, Censullo

9   acknowledged that these documents consisted of notes that he took

10  during weekly conference calls with other regional sales managers at

11  Micron, who like Censullo were responsible for major OEM customers.

12  During these calls the managers would discuss price recommendations

13  for major OEM customers and the prices at which competitors would

14  sell their products to these OEM customers. Censullo's notes reflected

15  this pricing information and identified communications between Micron

16  and its competitors about sales and pricing.

17  52.    These collusive activities perpetrated by Defendants worked: by the end of

18  2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot

19  price.

20  53.    Nevertheless, Defendants again publicly, and falsely, attributed the increase

21  in DRAM price to legitimate market forces. In a December 4, 2001, interview published

22  on Simmtester.com, Steve Appleton, chief executive officer of Co-Conspirator Micron

23  Technology, Inc., was asked why prices had recently increased sharply and suddenly. He

24  answered:

25  "I have no idea. There clearly was a belated increase in demand as the seasonal

26  rebound we had expected two-and-a-half months earlier finally kicked in. And,

27  clearly the Japanese are cutting back their DRAM production. Even Hynix, which

28  is so unpredictable, cut some production by temporarily closing its Eugene, Ore.,

13

1   fab. When it was running at 40K wafer capacity a month, that fab alone probably

2   had about 2.5% of the world's DRAM production."

3       54.   DRAM price increases, as well as Defendants' conspiracy, continued into

4   2002. From November 2001 to April 2002, DRAM prices tripled. And in May 2002,

5   Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US $3.

6   That's the consensus . . . You don't need to have a meeting. You just need to have a

7   phone call. Everybody knows each other. We just said 'try not to sell below US $3." On

8   the other hand, in a press release issued on April 15, 2002, Hynix represented that its

9   increased revenues resulted from increased demand in the DRAM market.

10      55.   On June 18, 2002, Co-conspirator Micron Technology, Inc. announced it

11   had been cooperating with a Department of Justice investigation of the DRAM industry.

12      56.   By June 20, 2002, defendants Hynix and Infineon and Co-conspirator

13   Samsung confirmed that they had received subpoenas from a grand jury investigating

14   DRAM collusion.

15      57.   On September 12, 2003, Co-conspirator Elpida Memory, Inc. announced

16   that it had received subpoenas from the DRAM grand jury.

17      58.   On or about September 4, 2004, defendant Infineon entered into a plea

18   agreement with the government, pursuant to which it agreed to plead guilty to conspiring

19   to fix prices in the DRAM market between July 1999 and June 2002.

20      59.   On April 21, 2005, the Department of Justice announced that it had entered

21   into a plea agreement with defendant Hynix pursuant to which Hynix agreed to plead

22   guilty to conspiring to fix prices in the DRAM market between April 1999 and June

23   2002.

24      60.   On or about October 13, 2005, the Department of Justice announced that it

25   had entered into a plea agreement with Co-conspirator Samsung pursuant to which

26   Samsung agreed to plead guilty to conspiring to fix prices in the DRAM market between

27   April 1999 and June 2002.

28      61.   Three months later, on January 30, 2006, the Department of Justice

14

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   announced that it had entered into a plea agreement with Co-conspirator Elpida Memory,

2   Inc. pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM

3   market between April 1999 and June 2002.

4   **G.     Violations Alleged**

5                              **FIRST CAUSE OF ACTION**

6                    **(Violation of Sherman Act Against All Defendants)**

7          62.    Plaintiff incorporates by reference, as if fully set forth, the allegations of

8   paragraphs 1 through 61 of this Complaint.

9          63.    Beginning in or about January 1997, the exact date being unknown to

10  Plaintiff, and continuing thereafter at least through 2002 Defendants, by and through their

11  officers, directors, employees, agents, or other representatives, entered in a continuing

12  contract, combination, or conspiracy to unreasonably restrain trade and commerce in

13  violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2).

14         64.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and

15  maintained the market price of DRAM as herein alleged.

16         65.    The contract, combination, or conspiracy consisted of a continuing

17  agreement, understanding, and concert of action among Defendants, the substantial terms

18  of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the

19  market for, DRAM they sold throughout the world, including the United States.

20         66.    Upon information and belief, for the purposes of formulating and

21  effectuating their contract, combination, or conspiracy, Defendants did those things they

22  contracted, combined or conspired to do, including:

23         a.   participating in meetings and conversations to discuss the prices of and/or

24              allocate the market for DRAM;

25         b.   agreeing to manipulate capacity, production, and prices so as to boost

26              sagging DRAM prices in a manner that deprived direct purchasers of free

27              and open competition;

28         c.   issuing price announcements and price quotations in accordance with the

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

                                       15

1        agreements reached; and

2            d.    selling DRAM to customers throughout the world, including the United

3                States, at artificially inflated and non-competitive prices.

4        67.    The above combination and conspiracy has had the following effects,

5    among others:

6            a.    price competition in the sale of DRAM by Defendants has been restrained,

7                suppressed, and eliminated throughout the world, including the United

8                States;

9            b.    prices for DRAM sold by Defendants have been raised, fixed, maintained,

10                and stabilized at artificially high and noncompetitive levels throughout the

11                world, including the United States; and

12            c.    purchasers of DRAM from Defendants have been deprived of the benefit of

13                free and open competition in the purchase of DRAM.

14        68.    As a direct and proximate result of the unlawful conduct of Defendants in

15    furtherance of their continuing contract, combination, and/or conspiracy, Plaintiff has

16    been injured in its business and property in that its has paid more for DRAM than it

17    otherwise would have paid in the absence of the Defendants' unlawful price fixing.

18                    **SECOND CAUSE OF ACTION**

19    **(Violation of California's Cartwright Act Under § § 16700 Et Seq. Of The California**

20            **Business & Professions Code Against All Defendants)**

21        69.    Plaintiff incorporates by reference, as if fully set forth, paragraphs 1

22    through 68 of this Complaint.

23        70.    Beginning in or about January 1997, the exact date being unknown to

24    Plaintiff, and continuing thereafter at least through 2002, Defendants by and through their

25    officers, directors, employees, agents, or other representatives violated Section 16700 *et*

26    *seq*. of the California Business and Professions Code ("Section 16700" or "Cartwright

27    Act") by entering into and engaging in a continuing unlawful trust in restraint of trade

28    and commerce, as described above. During this period, Defendants, and each of them,

*(left margin)* crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  have effected this unlawful trust, and violated Section 16700, by combining, conspiring,

2  and/or agreeing to fix, raise, stabilize, and maintain the prices of, and/or allocate the

3  market for, DRAM at supra-competitive levels.  Section 16720 of the Cartwright Act

4  expressly forbids the creation of such unlawful trusts.

5       71.     The purpose of Defendants' unlawful combination, conspiracy, and/or

6  agreement was to create artificially higher DRAM prices in the marketplace thereby

7  providing Defendants, and each of them, with substantially higher revenues and profits

8  than would otherwise have been the case in a truly competitive market.

9       72.     In forming, and in furtherance of, this unlawful combination, conspiracy,

10  and/or agreement, Defendants engaged in acts, practices, and courses of conduct, which

11  included, but are not limited to, the following:

12       a.  participating in meetings and/or discussions amongst themselves, as

13           discussed more fully above, for the purpose of coordinating DRAM

14           production reductions to limit supply and fix, raise, stabilize, and maintain

15           the prices of, and/or allocate the market for, DRAM;

16       b.  participating in meetings, discussions, and/or communications amongst

17           themselves, as discussed more fully above, for the purpose of exchanging

18           information about DRAM prices and setting price ranges for DRAM to fix,

19           raise, stabilize, and maintain the prices of, and/or allocate the market for,

20           DRAM;

21       c.  participating in meetings, discussions, and/or communications amongst

22           themselves, as discussed more fully above, for the purpose of setting

23           DRAM contract prices for OEM customers to fix, raise, stabilize, and

24           maintain the prices of, and/or allocate the market for, DRAM; and

25       d.  using their best efforts to ensure that the prices each charged its customers

26           for DRAM were within the price range, or at the same price, agreed to

27           during the meetings, discussions, and/or communications held amongst

28           themselves.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF UNISYS CORPORATION

73.    As a direct consequence of the Defendants' acts, practices, and course of conduct in implementing the unlawful trust, the following have occurred:

    a.    DRAM price competition has been restrained, suppressed, and/or eliminated, including, but not limited to, within and throughout the State of California;

    b.    DRAM price has been fixed, raised, maintained, and stabilized at a high and artificial level, including, but not limited to, within and throughout the State of California;

    c.    Plaintiff has been deprived of the benefit of free and openly competitive negotiations for DRAM in the marketplace; and

    d.    Plaintiff has been forced to pay artificially high prices for DRAM for use in their computer systems, network products, and servers.

74.    As a direct and proximate result of Defendants' unlawful combination, conspiracy, and/or agreement, Plaintiff has been injured in its business and property in that it had to pay more for DRAM than it would have paid in an otherwise free and open marketplace. Plaintiff is unable to state its damages with precision at this time, because that determination will require discovery and accounting analysis of Defendants' books and records. Nevertheless, under Section 16750(a) of the Business and Professions Code, Plaintiff is entitled to interest on the aforementioned sum from the dates of service of this Complaint until entry of judgment thereon, to its costs of suit, including reasonable attorneys' fees and treble damages.

## THIRD CAUSE OF ACTION

### (Unfair Competition Under § § 17200 Et Seq. Of

### The California Business & Professions Code Against All Defendants)

75.    Plaintiff incorporates by reference, as if fully set forth, paragraphs 1 through 74 of this Complaint.

76.    Plaintiff brings this action pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts,

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1 | as alleged herein, that violate Section 17200 *et seq.* of the California Business and

2 | Professions Code, commonly known as the Unfair Competition Act.

3 |      77.    Beginning in or about January 1997, the exact date being unknown to

4 | Plaintiff, and continuing thereafter at least through 2002, Defendants by and through their

5 | officers, directors, employees, agents, or other representatives committed, and continue to

6 | commit, acts of unfair competition, as defined by Sections 17200 *et seq.* of the California

7 | Business and Professions Code. Defendants' acts of unfair competition, more fully

8 | alleged in paragraphs 1 through 74 above, included participating in an unlawful

9 | combination, conspiracy, and/or agreement to fix, raise, stabilize, and maintain the prices

10 | of, and/or allocate the market for, DRAM prices and making misrepresentations, or

11 | fraudulently concealing relevant information, concerning the reason for increased DRAM

12 | prices.

13 |      78.    Plaintiff has standing to bring this action, because it purchased DRAM

14 | from some of the Defendants during the period January 1997 to the present. In doing so,

15 | Plaintiff was injured by Defendants' unlawful actions, because it paid more for DRAM

16 | than it otherwise would have, as described more fully above. These higher prices caused

17 | Plaintiff to lose money and customers, who could not afford to purchase Plaintiff's

18 | products or services containing artificially high-priced DRAM.

19 |      79.    Defendants' conduct as alleged herein violates Section 17200 *et seq.* The

20 | unlawful combination, conspiracy, and/or agreement effected by Defendants, as well as

21 | their acts, omissions, misrepresentations, practices, and non-disclosures in furtherance

22 | thereof, as alleged herein, constitute a common continuous and continuing course of

23 | conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business

24 | acts or practices within the meaning of California Business and Professions Code,

25 | Section 17200 *et seq.* including, but in no way limited to, the following:

26 |      a.   Defendants' violations of 15 U.S.C. § 1 and Section 16700 *et seq.,* of the

27 |            California Business and Professions Code, as set forth in Paragraphs 1

28 |            through 74, above;

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

19

b. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures regarding how they set DRAM prices, as described in Paragraphs 1 through 74 above – whether or not in violation of 15 U.S.C. § 1 and Section 16700 *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts – are otherwise unfair, unlawful, or fraudulent;

c. Defendants' act and practices, as alleged in paragraphs 1 through 74, are unfair to consumers of DRAM in the State of California and throughout the United States, within the meaning of Section 17200 *et seq.*, California Business and Professions Code; and

d. Defendants' acts and practices, as alleged in paragraphs 1 through 74, are fraudulent or deceptive within the meaning of Section 17200 *et seq.* of the California Business and Professions Code.

80. The aforementioned unlawful and unfair business practices of Defendants, and each of them, have injured and present a continuing threat of injury to Plaintiff. Defendants' conduct has restrained competition in the DRAM market, has caused Plaintiff to pay supra-competitive and artificially-inflated prices for DRAM, and has deceived, and may continue to deceive, Plaintiff with respect to the manner in which the prices charged for DRAM have been and will be set. Thus, Plaintiff is informed and believes that the Defendants may continue to persist in this conduct and commit the aforementioned acts unless and until the Court orders the Defendants to cease and desist.

81. Defendants have been unjustly enriched as a result of their wrongful conduct and unfair competition. Plaintiff is accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits in order to restore money lost by Plaintiff and that may have been obtained by Defendants as a result of such unfair business acts and practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204. In addition, Plaintiff seeks a permanent injunction enjoining Defendants, and their officers,

20

COMPLAINT OF UNISYS CORPORATION

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   directors, employees, agents, or other representatives, and all others acting in concert

2   with Defendants to cease and desist from colluding together to fix, raise, stabilize, and

3   maintain the prices of, and/or allocate the market for, DRAM prices and making

4   misrepresentations, or fraudulently concealing relevant information, concerning the

5   reason for increased DRAM prices.

6       **H.    Tolling of the Applicable Statute of Limitations due to**

7           **Fraudulent Concealment**

8       82.    Plaintiff had no knowledge of the combination and conspiracy alleged

9   herein, or of any facts that might have led to the discovery thereof in the exercise of

10  reasonable diligence, prior to June 2002 when defendants Hynix, Infineon, and Co-

11  conspirators Samsung and Micron Technology, Inc. first disclosed publicly that the

12  Department of Justice was investigating the DRAM industry.

13      83.    Plaintiff could not have discovered the existence of the combination and

14  conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence

15  because of the deceptive practices and techniques of secrecy employed by the Defendants

16  to avoid detection and affirmatively conceal such violations including, without limitation,

17  falsely attributing price increases to increased demand, shortages in supply, increased

18  manufacturing costs, increased prices of labor and of raw materials, and/or insufficient

19  production capacity.  Such false statements included, without limitation:

20          a.  The statement of Co-conspirator Samsung's vice president of marketing,

21              Avo Kanadjian, in a September 13, 1999, article, alleged more fully above

22              in paragraph 49, that higher prices were attributable to a DRAM shortage,

23              which was concurred upon by Chee-Wai Ho, director of product marketing

24              for memory products at Infineon Technologies AG; and,

25          b.  Hynix's April 15, 2002, representation, alleged in paragraph 54, that its

26              increased revenues resulted from increased demand in the DRAM market.

27      84.    Defendants also falsely informed their customers that they were unable to

28  sell their products at a lower price due to increased manufacturing costs, increased prices

crowell&moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

**COMPLAINT OF UNISYS CORPORATION**

1    of labor and of raw materials, and insufficient production capacity.

2        85.    Plaintiff had no reason to disbelieve these statements. Furthermore, most

3    of the explanations provided by Defendants involved non-public and/or proprietary

4    information completely in Defendants' control such that Plaintiff could not verify their

5    accuracy. Defendants' purported reasons for their price increases of DRAM were

6    materially false and misleading and were made for the purpose of concealing Defendants'

7    anti-competitive scheme as alleged herein. In truth, at all relevant times, the price of

8    DRAM was artificially inflated and maintained as a direct result of the Defendants' anti-

9    competitive scheme, the operation of which was a substantial (but undisclosed) factor in

10    the pricing of DRAM during the relevant period.

11        86.    As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts

12    the tolling of the applicable statute of limitations affecting Plaintiff's claims.

13    **I.    Damages/Restitution**

14        87.    During the relevant period, Plaintiff directly and indirectly purchased

15    DRAM from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of

16    the antitrust violations herein alleged, paid more for such products than it would have

17    paid in the absence of such antitrust violations. As a result, Plaintiff has sustained

18    damages to its business and property and defendants wrongfully acquired money from

19    Plaintiff in an amount to be determined at trial.

20    **J.    Prayer for Relief**

21        WHEREFORE, Plaintiff demands judgment against defendants, and each of them,

22    as follows:

23        88.    A declaration that the unlawful combination and conspiracy alleged herein

24    is an unreasonable restraint of trade of commerce in violation of Section 1 of the

25    Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2), and in violation of Sections 16700 *et seq.*

26    and 17200 *et seq.* of the California Business and Professions Code;

27        89.    An injunction enjoining, preliminarily and permanently, defendants and all

28    those acting in concert or in active participation with defendants from continuing the

22

**COMPLAINT OF UNISYS CORPORATION**

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1 | unlawful combination and conspiracy alleged herein;

2 |     90.    An award to Plaintiff of damages, as provided by law, and joint and several

3 | judgments in favor of Plaintiff against defendants, and each of them, in an amount to be

4 | trebled in accordance with the federal and California antitrust laws;

5 |     91.    For restitution and disgorgement of revenues, earnings, profits,

6 | compensation, and benefits that have been wrongfully taken by defendants from Plaintiff

7 | as provided by 17200 *et seq.* of the California Business & Professions Code;

8 |     92.    An award to Plaintiff for the costs of this suit (including expert fees), and

9 | reasonable attorneys' fees, as provided by law; and

10 |     93.    An award to Plaintiff for such other and further relief as the nature of this

11 | case may require or as this Court deems just, equitable and proper.

13 | DATED: April 28, 2006          CROWELL & MORING LLP

By:

Kent A. Gardner
Kathryn D. Kirmayer
Jerome A. Murphy
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Phone: 202-624-2578
Fax:    202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone: 949-263-8400
Fax:    949-263-8414

Counsel for Plaintiff
Unisys Corporation

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF UNISYS CORPORATION

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of all triable issues.

DATED:  April 28, 2006

CROWELL & MORING LLP

By: _____
Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Phone:  202-624-2578
Fax:     202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone:  949-263-8400
Fax:     949-263-8414

Counsel for Plaintiff
Unisys Corporation

## Certification of Interested Entities or Persons

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED:  April 28, 2006

CROWELL & MORING LLP

By: _____
Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Phone:  202-624-2578
Fax:     202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone:  949-263-8400
Fax:     949-263-8414

Counsel for Plaintiff
Unisys Corporation

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF UNISYS CORPORATION