**United States District Court**
For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7   SUN MICROSYSTEMS INC.,

8            Plaintiff,                        No. C 06-1665 PJH

9        v.                                    **ORDER GRANTING
                                               MOTION TO DISMISS**
10   HYNIX SEMICONDUCTOR INC., et al.,

11           Defendants.
     _____/
12

13   This Document Also Relates to:

14   Unisys Corp. v. Hynix et al.
     (C06-2915 PJH)
15   _____/

16           Defendants' motion to dismiss plaintiffs' consolidated complaint came on for hearing

17   before this court on March 7, 2007.  Plaintiffs, Sun Microsystems, Inc. ("Sun") and Unisys

18   Corporation ("Unisys")(collectively"plaintiffs"), appeared through their counsel, Kathryn

19   Kirmayer and Jerome A. Murphy.  Defendants appeared through their counsel, Kenneth

20   O'Rourke, Terrence Truax, Kenneth Keller, Steven H. Bergman, Julian Brew, James G.

21   Kreissman, Alejandro Vallejo, Renato Mariotta, Steven H. Morrissett, and Margaret J.

22   Simpson.  Having read the papers filed in conjunction with the motion and carefully

23   considered the arguments and the relevant legal authority, the court hereby GRANTS

24   defendants' motion, for the reasons stated at the hearing and as follows.

25                              **BACKGROUND**

26           Plaintiffs are corporations involved in the technology field.  Sun is a leading maker of

27   computer servers, workstations, and storage systems, with recent revenues of

28   approximately $11.1 billion.  Unisys is a global technology services and solutions company,

United States District Court

For the Northern District of California

offering services in consulting, systems integration, outsourcing, infrastructure, and server technology.  Both entities purchased dynamic random access memory ("DRAM") from the fifteen defendants in this action.[1]  DRAM is an electronic memory microchip that is used to store digital information and provide high-speed storage and retrieval of data, and all defendants are engaged in the manufacture, sale, and/or distribution of DRAM.

On September 1, 2006, plaintiffs filed a consolidated complaint against defendants. See Consolidated Complaint for Damages and Injunctive Relief ("Complaint").  Plaintiffs allege that, from 1997 through 2002, defendants engaged in a conspiracy to control DRAM production capacity, raise DRAM prices, allocate customers, and otherwise unlawfully overcharge their DRAM customers.  See id. at ¶¶ 1, 69.  As a result, plaintiffs allege that they suffered injury, in that they paid more for DRAM than they otherwise would have in the absence of defendants' conspiracy, and they seek damages accordingly.  Id. at ¶¶ 74, 79-80, 86.

In addition to these allegations, plaintiffs' consolidated complaint also attempts to illuminate the method by which each plaintiff entity actually purchased DRAM from defendants.  Each plaintiff purchased DRAM slightly differently. The relevant allegations with respect to each is as follows:

**Sun**.  Sun purchased DRAM in two ways.  First, Sun would enter into direct negotiations with defendants, whereby Sun would negotiate price, quantity, and type of DRAM.  See Complaint, ¶ 11.  Sun entered into these negotiations on behalf of itself (i.e., in order to secure DRAM for use and manufacture of DRAM products at its own Sun facilities), and also on behalf of its "external" manufacturers (i.e., Sun has contracts with

---

[1]    The defendants are:  Hynix Semiconductor Inc., and Hynix Semiconductor America Inc. ("Hynix"); Mosel-Vitelic Inc., and Mosel-Vitelic Corporation ("Mosel-Vitelic"); Nanya Technology Corporation, and Nanya Technology Corporation USA ("Nanya"); Winbond Electronics Corporation, and Winbond Electronics Corporation America ("Winbond"); Elpida Memory, Inc., and Elpida Memory (USA) Inc. ("Elpida"); Mitsubishi Electric Corporation, Mitsubishi Electric and Electronics USA, Inc., and Mitsubishi Electric Europe B.V. ("Mitsubishi"); Infineon Technologies AG, and Infineon Technologies North America Corporation ("Infineon")(collectively "defendants").

United States District Court

For the Northern District of California

third party manufacturers, who manufacture goods containing DRAM for Sun's benefit).  Id.
Second, Sun purchased DRAM through private bidding auctions that it conducted at its
headquarters in San Jose.  Both US and foreign DRAM suppliers participated in these
auctions, and Sun would purchase DRAM from winning bidders.  The DRAM that Sun
purchased as a result of these auctions was also for use both at Sun's facilities and at its
external manufacturers' facilities.  Id.  All the DRAM purchased by Sun, whether as a result
of direct negotiations with defendants, or the private auction process, was "delivered both
throughout the United States and the world."  Id.

**Unisys**.  Unisys purchased its DRAM through direct negotiations with "some of the
defendants."  See Complaint, ¶ 12.  Unisys does not allege that it had any private auction
process in place for the purchase of DRAM.

Plaintiff's consolidated complaint asserts three causes of action against defendants:
(1) violation of section 1 of the Sherman Act; (2) violation of California's state antitrust
statute, the Cartwright Act; and (3) violation of California's Unfair Competition Act, Cal. Bus.
& Prof. Code §§ 17200 et seq.  See Complaint, ¶¶ 68-87.

Defendants have jointly filed a motion to dismiss plaintiffs' consolidated complaint.
Defendants categorize plaintiffs' allegations and claims as based on either foreign or
domestic injury, and they seek (a) dismissal of plaintiffs' claims based on foreign injury,
both for lack of subject matter jurisdiction and for failure to state a claim; and (b) dismissal
of plaintiffs' claims based on both foreign and domestic injury, for failure to satisfy notice
pleading requirements.  In sum, however, defendants seek dismissal of all three claims
brought by plaintiffs.

## DISCUSSION

A.    Legal Standards

1.    12(b)(1) standard

On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the
burden of establishing subject matter jurisdiction (even though it is defendants' motion).

3

United States District Court

For the Northern District of California

1    See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994); Stock West, Inc.

2    v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).  In

3    determining the motion, the court must consider the allegations of the complaint as true.

4    See Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd 56 F.3d 1177

5    (9th Cir. 1995).

6              2.    12(b)(6) standard

7         A court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a

8    claim only where it appears beyond doubt that the plaintiff can prove no set of facts in

9    support of the claim which would entitle the plaintiff to relief.  See, e.g., Broam v. Brogan,

10   320 F.3d 1023, 1033 (9th Cir. 2003) (citations omitted).  In evaluating a motion to dismiss,

11   all allegations of material fact are taken as true and construed in the light most favorable to

12   the nonmoving party.  See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d

13   661, 663 (9th Cir. 2000) (citations omitted).

14             3.    FRCP 8 standard

15        Federal Rule of Civil Procedure ("FRCP") 8 requires that a complaint set forth all

16   claims in short and plain terms, and in a manner that is simple, concise and direct.  See

17   Fed. R. Civ. Proc. 8(a).  The complaint need not, however, allege every fact constituting the

18   claim for relief or detailed evidentiary facts – it need only give fair notice of the plaintiff's

19   claim so that the opposing party can respond, undertake discovery and prepare for trial.

20   See, e.g., Conley v. Gibson, 355 U.S. 41, 47-48 (1957); see also Bautista v. Los Angeles

21   County, 216 F.3d 837, 843 (9th Cir. 2000).

22   B.   Defendants' Motion to Dismiss

23        Defendants raise three overriding arguments in support of their motion to dismiss.

24   First, defendants assert that plaintiffs' claims, to the extent they are based on DRAM

25   "delivered ... throughout the ... world", should be dismissed for lack of subject matter

26   jurisdiction pursuant to the Foreign Trade Antitrust Improvements Act ("FTAIA").   Second,

27   defendants contend that plaintiffs lack standing to pursue these claims, which defendants

28

                                          4

assert are based on 'foreign injuries.'  Finally, defendants argue that plaintiffs' complaint in its entirety must be dismissed – including claims based on *both* foreign and domestic injuries – because plaintiffs have failed to set forth a "short and plain statement of the claim" as required by FRCP 8(a).

The lion's share of defendants' legal arguments, however, is targeted at the so-called 'foreign injury' claims that they assert are present in plaintiffs' consolidated complaint.  Specifically, defendants contend that, since plaintiffs' claims are based at least in part on artificially high DRAM prices that were paid by plaintiffs – or by independent third party manufacturers – for DRAM that was delivered abroad for use abroad, this 'foreign' portion of plaintiffs' claims is not recoverable under the FTAIA and the Empagran line of cases.  See 15 U.S.C. § 6a; F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004)("Empagran I")(where there is "significant foreign anticompetitive conduct []with an adverse domestic effect and []an independent foreign effect giving rise to a claim" FTAIA bars jurisdiction); Empagran S.A. v. F. Hoffman-La Roche, Ltd., 417 F.3d 1267 (D.C. Cir. 2005)("Empagran II").  Although defendants recognize that such claims might be allowed to proceed in the event plaintiffs can satisfy the "domestic injury" exception to the FTAIA's prohibitions, defendants contend that this is not the case here.  See Empagran I, 542 U.S. at 162 (FTAIA not a bar where foreign conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce and the "effect ... gives rise to a [Sherman Act] claim"); Empagran II, 417 F.3d at 1271 (proximate causation necessary between domestic effects of foreign conduct and the foreign injury claim in order for FTAIA's domestic injury exception to apply).

Plaintiffs, naturally, resist.  They respond by pointing out that, as a preliminary matter, their claims cannot be forcibly broken down into foreign injury claims, as distinguished from domestic injury claims.  Neither the FTAIA nor Empagran and its progeny sanction such an approach; that law simply holds that, where a foreign plaintiff seeks redress for foreign conduct that has led to independent foreign harm, subject matter

5

United States District Court

For the Northern District of California

1   jurisdiction will not be found.  Plaintiffs distinguish this case by pointing out that, since it is

2   undisputed that at least some portion of their claim is based on DRAM purchases made

3   and delivered within the U.S. and that jurisdiction over this portion of the claim is warranted,

4   there is no restriction on the court's ability to assume jurisdiction for the whole of plaintiffs'

5   claim – including the foreign-based portion.  Even assuming, though, that the court allows

6   plaintiffs' foreign injury and domestic injury claims to be segregated and evaluated

7   separately, plaintiffs assert that their foreign injury claims would still be viable, since the

8   claims arise directly from the domestic anticompetitive effects of defendants' global

9   conspiracy.

10      In sum, resolution of defendants' motion requires, in turn, resolution of several sub-

11  issues: (1) whether plaintiffs' claims can and should be segregated into domestic injury and

12  foreign injury components; (2) if so, whether the FTAIA's jurisdictional bar is applicable to

13  the foreign injury component of plaintiffs' claims; and (3) if so, whether plaintiffs have

14  sufficiently stated or demonstrated that the domestic injury exception to the FTAIA is

15  applicable, such that jurisdiction is after all warranted.

16      In analyzing these issues, the court notes that many of the arguments raised by

17  plaintiffs in their papers, and at the hearing on this matter, make intuitive sense.  For

18  example, plaintiffs are correct that the FTAIA's application is likely not triggered by

19  allegations of foreign "injury" but rather by allegations of foreign "conduct," and is primarily

20  meant to redress "wholly foreign transactions" – a scenario that does not quite fit

21  comfortably with the present scenario, in which foreign transactions have been alleged in

22  connection with domestic transactions.  See Empagran I, 542 U.S. at 163 (citing House

23  Report noting that FTAIA clearly covers "wholly foreign transactions as well as export

24  transactions... but [not] import transactions").  Moreover, plaintiffs' existing allegations and

25  supporting declarations regarding the various methods by which plaintiffs purchased DRAM

26  from defendants – Sun, in particular – may conceivably be sufficient to satisfy the domestic

27  injury exception to the FTAIA, with respect to any distinct claims based on foreign injury or

28

1   harm.

2       This is not to say, however, that there is no tension between plaintiffs' position, and

3   relevant legal precedent.  The court acknowledges that under the Empagran line of cases,

4   it is well-settled that, where a foreign plaintiff seeks redress for harm resulting from

5   primarily foreign conduct – and the harm is independent from any U.S. domestic effects of

6   the conduct – no subject matter jurisdiction is possible.  See, e.g., Empagran I, 542 U.S.

7   155 ; Empagran II, 417 F.3d 1267; In re Monosodium Glutamate Antitrust Litig., 477 F.3d

8   535 (8th Cir. 2007).  Accordingly, in the event that plaintiffs' claims are severable, and are

9   furthermore determined to be based in part on purchases made by wholly foreign third

10  parties abroad, this line of cases may very well prove instructive.

11      Preliminarily, however, the court must first be able to define the precise nature of

12  plaintiffs' claims, and to identify with specificity the exact 'domestic injury' and 'foreign

13  injury' allegations upon which defendants assert that plaintiffs claims are based.  Without

14  this information, the court cannot begin to determine any of the above issues.

15      In this respect, plaintiffs' complaint leaves much to be desired.  While plaintiffs do

16  not dispute that there is some portion of their claims that is based, as defendants contend,

17  on foreign harm, it is extremely difficult for the court to tell which allegations correspond to

18  that portion of plaintiffs' claims.  There are no allegations, for example, that directly

19  distinguish between DRAM delivered in the U.S. and DRAM delivered abroad, between

20  DRAM purchased in the U.S. and DRAM purchased abroad, or between DRAM purchased

21  by plaintiffs directly and purchased by third parties directly.  Rather, plaintiffs' allegations

22  paint with broad brush strokes that focus on the act of DRAM deliveries as opposed to the

23  act of DRAM purchases, making it impossible to specifically identify the nature and range of

24  claims based on DRAM purchased here, or abroad.  This, in turn, makes it impossible for

25  either defendants or the court to accurately assess whether there really are claims being

26  alleged by plaintiffs that can be characterized as wholly foreign, and what portion of

27  plaintiffs' claims can be characterized as such.

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  In sum, while the court may very well ultimately conclude that plaintiffs are correct in

2  stating that no severable claims based on foreign harm may be dismissed pursuant to the

3  FTAIA, the court first requires more information and specificity from plaintiffs with respect to

4  the claims they are alleging.  In short, the court is of the opinion that plaintiffs have failed to

5  state, in simple, concise and direct terms, a short and plain statement of their claims,

6  consistent with the requirements of FRCP 8(a).  While the court recognizes that plaintiffs'

7  complaint need not allege every fact constituting its claim in great detail, it nonetheless

8  finds that as currently plead, plaintiffs' consolidated complaint fails to provide fair notice of

9  the entire basis – i.e., foreign harm versus domestic harm – for plaintiffs' claims.  See, e.g.,

10  Conley v. Gibson, 355 U.S. 41, 47-48 (1957); see also Bautista v. Los Angeles County, 216

11  F.3d 837, 843 (9th Cir. 2000).

12  Accordingly, the court hereby DISMISSES plaintiffs' consolidated complaint for

13  failure to comply with the notice pleading standard contemplated by FRCP 8(a), and grants

14  plaintiffs leave to amend their complaint in order to set forth allegations that provide greater

15  clarity and specificity with respect to that portion of plaintiffs' claims which is based on

16  foreign harm, and that portion which is based on domestic harm.  Specifically, and should

17  plaintiffs choose to file an amended complaint, plaintiffs must amend their complaint to

18  allege for each plaintiff:  where the price for the DRAM purchases upon which plaintiffs

19  base their claims was negotiated; where the DRAM purchases upon which plaintiffs base

20  their claims were actually made; whether plaintiffs themselves, subsidiaries, or third parties

21  made the actual purchases of DRAM; where any subsidiaries or third parties making DRAM

22  purchases on plaintiffs' behalf were located;[2] where the DRAM was ultimately delivered or

23  _____

24  [2]  Plaintiffs have some degree of flexibility regarding the degree of specificity they
should employ in alleging the existence and location of various worldwide subsidiaries and/or
25  third party entities.  The court is simply seeking to understand the volume of DRAM purchases
and distribution taking place outside the U.S. as contrasted with that taking place inside the
26  U.S., for which plaintiffs seek recovery of overcharges.  To that end, if the number of plaintiffs'
subsidiaries and third party entities numbers into the hundreds, for example, it would be
27  sufficient for plaintiffs to simply identify by country and percentage number the subsidiaries and
third party entities making DRAM purchases or taking deliveries of DRAM on behalf of
28  plaintiffs.

**United States District Court**
For the Northern District of California

1   distributed.  In addition, plaintiffs must specify which particular claims are being alleged by

2   plaintiffs as indirect purchasers rather than direct purchasers.

3          In view of this holding, the court declines to reach the merits of defendants'

4   remaining arguments with respect to subject matter jurisdiction pursuant to FRCP 12(b)(1),

5   or with respect to lack of standing.

6          Any amended complaint must be filed no later than **Friday, May 4, 2007**.

7   Defendants are granted until **Monday, June 4, 2007**, to either answer the amended

8   complaint, or file a renewed motion to dismiss.  If defendants choose to file a motion to

9   dismiss, they are instructed to file new motion papers in connection with such a motion.

10

11  **IT IS SO ORDERED.**

12  Dated: April 5, 2007

13                                                        _____
                                                          PHYLLIS J. HAMILTON
14                                                        United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28